# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CSM Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>HRI Lodging, LLC; HRI Properties, Inc., *d/b/a HRI Properties*; Urban Minneapolis Plymouth Building, LLC; and Urban Minneapolis Plymouth Tenant, LLC,<br><br>        Defendants. | Case No. 18-cv-2278 (SRN/HB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Christopher W. Madel, Todd L. Hennan, and Ellen M. Ahrens, Madel PA, 800 Hennepin Avenue, Suite 800, Minneapolis, MN 55403 for Plaintiff.

Eric E. Walker and Keith G. Klein, Perkins Coie LLP, 131 South Dearborn Street, Suite 1700, Chicago, IL 60603, and Arthur G. Boylan and Peter McElligott, Anthony Ostlund Baer & Louwagie PA, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402 for Defendants.

SUSAN RICHARD NELSON, United States District Judge

      In August of 2018, Defendants removed this case to federal court asserting diversity jurisdiction, and promptly filed a motion to dismiss Plaintiff's complaint on res judicata grounds. However, because both Plaintiff CSM Corporation and Defendants Urban Minneapolis Plymouth Building, LLC and Urban Minneapolis Plymouth Tenant, LLC, are Minnesota citizens, and because there was no indication that Plaintiff "fraudulently joined" those two Defendants, as that term is defined under Eighth Circuit case law, *see Filla v. Norfolk So. Ry. Co.*, 336 F.3d 806 (8th Cir. 2003), Plaintiff moved to remand this case to state

court for lack of complete diversity of citizenship. In the alternative, Plaintiff also contended that Defendants' res judicata-based motion to dismiss was meritless.

Because the Court agrees with Plaintiff that it lacks subject matter jurisdiction over this dispute, the Court declines to consider Defendants' motion to dismiss, and accordingly remands this case back to state court.

## I. BACKGROUND

This is a dispute between two hotel developers over allegedly nefarious business practices. Put simply, Plaintiff alleges that Defendants clandestinely worked with one of Plaintiff's former senior executives, a man named Michael Coolidge, to steal lucrative business opportunities from Plaintiff, and then hire Coolidge away from Plaintiff to help Defendants consummate these business opportunities, namely, the purchase and development of the "Plymouth Building Embassy Suites" in downtown Minneapolis.

For purposes of subject matter jurisdiction, however, only the following allegations from Plaintiff's Amended Complaint (Doc. No. 30) and Defendants' Fed. R. Civ. P. 7.1 corporate disclosure statements (Doc Nos. 6-11), are relevant:

*First*, Plaintiff CSM "is a corporation organized under the laws of Minnesota, with its principal place of business in Minneapolis, Minnesota." (Am. Compl. ¶ 6.)

*Second*, Defendant Urban Minneapolis Plymouth Tenant, LLC "is a limited liability company organized under the laws of Delaware with a principal place of business in Minneapolis, Minnesota" (*id*. ¶ 12), and a membership that includes Minnesota corporation U.S. Bancorp Community Development Corporation. (*See* Plymouth Tenant Rule 7.1 Statement [Doc. No. 10]; Hennan Affidavit [Doc. No. 31-2] ¶ 2.)

*Third*, Defendant Urban Minneapolis Plymouth Building, LLC "is a limited liability company organized under the laws of Delaware with a principal place of business in Minneapolis, Minnesota" (Am. Compl. ¶ 11), and a membership that includes Defendant Urban Minneapolis Plymouth Tenant, LLC. (*See* Plymouth Building Rule 7.1 Statement [Doc. No. 9].)

*Fourth*, Plaintiff alleges that, in May 2015, these two "Plymouth Building Defendants" acquired, and then began operating, "the Plymouth Building and Embassy Suites Flag for Downtown Minneapolis for the benefit of HRI and themselves," all while "knowing" that this purchase and development resulted from Mr. Coolidge's breach of his contractual and fiduciary duties. (*See* Am. Compl. ¶¶ 35, 150, 153.)

*Fifth*, more specifically, Plaintiff alleges that the Plymouth Building Defendants either tortiously interfered with Plaintiff and Mr. Coolidge's contract, or aided and abetted the other Defendants in tortious interference, because "the Plymouth Building Defendants knowingly induced and encouraged Coolidge to breach the provision of the Employment Agreements barring him from pursuing CSM opportunities within a year after the termination of his CSM employment [in October 2014], and assisted Coolidge in breaching the same, by, *inter alia*, acquiring the Plymouth Building and the Embassy Suites Flag in Downtown Minneapolis for their benefit and the benefit of HRI Defendants and others at CSM's expense and operating the same." (*Id*. ¶ 161; *see also id*. ¶¶ 197-99 (aiding and abetting).)

*Sixth*, Plaintiff alleges that, through the aforementioned conduct, the Plymouth Building Defendants "substantially assisted Coolidge in breaching his fiduciary duty to CSM." (*Id*. ¶ 174.)

*Seventh*, Plaintiff alleges that the Plymouth Building Defendants have been unjustly enriched by their retention of "a variety of substantial tax credits and other government benefits for the redevelopment of the Plymouth Building, and the proceeds resulting from the Plymouth Building and the Embassy Suites." (*Id.* ¶ 177.)

*Finally*, Plaintiff alleges that, upon their creation, the Plymouth Defendants "agreed to and did join" a civil conspiracy "between the HRI Defendants, Coolidge, and others, whereby Coolidge would breach his fiduciary and contractual duties to CSM, by, *inter alia*, pursuing CSM opportunities (including the Plymouth Building and the Embassy Suites Flag for Downtown Minneapolis) for his own and HRI's benefit both during and after his CSM employment, as well as acquiring, sharing, and using confidential CSM financial models and other information for HRI's benefit and at CSM's expense." (*Id.* ¶ 188.)

## II. DISCUSSION

### A. The Law

Because it is "fundamental that a court must have subject matter jurisdiction in order to take any action in the proceeding before it," the Court is dutybound to consider, as an initial matter, whether a case removed from state court is properly before it. *Matter of Buchman*, 600 F.2d 160, 164 (8th Cir. 1979). "If the district court concludes that it does not have subject matter jurisdiction, it must remand the case" back to state court. *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 444-45 (8th Cir. 2010) (citing 28 U.S.C. § 1447(c)). "All doubts about federal jurisdiction should be resolved in favor of remand." *Id.* at 446 (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)).

One form of subject matter jurisdiction is diversity jurisdiction, under which a federal court may hear a dispute concerning state law so long as "the matter in controversy exceeds the sum or value of $75,000," and "is between citizens of different States." 28 U.S.C. § 1332. The latter requirement mandates "complete diversity" of citizenship, "that is 'where no defendant holds citizenship in the same state where any plaintiff holds citizenship.'" *Junk*, 628 F.3d at 445 (quoting *In re Prempro*, 591 F.3d at 620)). A corporation is a citizen of (1) its state of incorporation, and (2) the state where the corporation's principal place of business is located, *see* 28 U.S.C. § 1332(c)(1), whereas a limited liability company (LLC)'s "citizenship is . . . the citizenship of each of its members," which are often other corporate entities. *OnePoint Sols., LLC v. Bochert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004)). Citizenship is determined by "the parties' status at the lawsuit's filing." *Id*.

However, "a plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). As such, a defendant may defeat a plaintiff's motion to remand for lack of complete diversity of citizenship by showing that the claims asserted against the non-diverse defendants have "no reasonable basis in fact and law." *Fillia*, 336 F.3d at 810. However, "if the state law *might* impose liability on the resident defendant under the facts alleged, then there is no fraudulent joinder." *Id*. This standard is less "demanding" than the Fed. R. Civ. P. 12(b)(6) "plausibility" standard, *Junk*, 628 F.3d at 445, and, indeed, "in situations where the sufficiency of the complaint against the non-diverse defendant is

5

questionable, 'the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide.'" *Fillia*, 336 F.3d at 811 (quoting *Iowa Public Serv. Co. v. Med. Bowl Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)); *see also Arens v. O'Reilly Auto., Inc.*, 874 F. Supp. 2d 805, 808 (D. Minn. 2012) ("It is a defendant's burden to establish fraudulent joinder, and that burden is a heavy one.").

**B. Analysis**

There is no dispute that Plaintiff and the Plymouth Building Defendants are not diverse. Rather, Defendants solely argue fraudulent joinder. (*See* Defs.' Mem. in Support of Mot. to Dismiss and in Opp. to Remand ("Defs.' Br.") [Doc. No. 38] at 20 ("Because there is no basis in fact or law for any claims against the Plymouth [Building] Defendants, they should be disregarded for purposes of [Plaintiff's] motion for remand.")); *see also* Defs.' Reply Br. [Doc. No. 59] at 15-22.) In advancing this argument, Defendants primarily contend that, because Plaintiff did not properly plead that Defendants had knowledge of Plaintiff's contract with Mr. Coolidge, Defendants could not have intentionally interfered with that contract, or aided and abetted others in doing so. (*See* Defs.' Br. at 15.) Defendants also contend that, because the Plymouth Building LLCs "were not formed until February 15, 2015 – more than four months after Coolidge's last day at CSM," those Defendants could not have helped Mr. Coolidge breach his fiduciary duties, as those duties only existed while Mr. Coolidge was still employed at CSM. (*Id*. at 16.) Defendants further argue that Plaintiff did not "adequately plead" his civil conspiracy and (in the alternative) unjust enrichment claims. (*Id*. at 16-18.)

There are two problems with Defendants' argument. First, in their briefing, Defendants appear to rely on the Fed. R. Civ. P. 12(b)(6) "plausibility" standard, rather than the "reasonable basis in fact or law" standard outlined above, and at no point attempt to distinguish cases like *Fillia*, *Junk*, *Knudson*, and *Arens*, where courts have found in favor of remand under the latter, "less demanding" standard. *See Junk*, 628 F.3d at 445 (noting that, in contrast to the "plausibility standard," "[u]nder the *Filla* standard "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved").

Second, without commenting on whether *all* of Plaintiff's claims against the Plymouth Building Defendants have a "reasonable basis in law or fact," the Court finds it clear that, at the least, Plaintiff's "tortious interference with contract" claims meet that standard. Under Minnesota law, "[a] cause of action for tortious interference with a contractual relationship requires five elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998). Defendants solely argue that the Amended Complaint does not properly plead the second element, "knowledge of the contract." (Defs.' Br. at 15.) The Court disagrees. As quoted above, the Amended Complaint alleges that the "Plymouth Building Defendants knowingly induced and encouraged Coolidge to breach the provision of the Employment Agreements barring him from pursuing CSM opportunities within a year after the termination of his CSM employment," which would have still been in effect when the Plymouth Building LLCs were formed in February 2015. (Am. Compl. ¶ 161.) The obvious implication of this language is

7

that the Plymouth Buildings "knowingly induced" Coolidge to breach the relevant provision of his Employment Agreement because they *knew* of the agreement. (*Id.*; *see also id.* ¶ 153 (alleging that the Plymouth Building Defendants "knew" "the facts alleged herein," which would include the existence of Mr. Coolidge's contract).)

That Plaintiff could have worded its complaint better is of no moment, as the fraudulent joinder standard "turns on whether [Plaintiff] might have a 'colorable' claim against [the Plymouth Building Defendants], not on the artfulness of [Plaintiff's] pleadings." *Junk*, 628 F.3d at 446 (finding that negligence claim against non-diverse party was not fraudulently joined, and noting that, "[a]lthough the conjunctive nature of Junk's complaint did not always distinguish between allegations against Terminix, the employer, and Breneman, the employee," assuming the complaint was properly pled was appropriate because "all doubts should be resolved in favor of remand") (cleaned up); *see also Arens*, 874 F. Supp. 2d at 808 (finding that a state court "might" impose liability for "reprisal" under the Minnesota Dismissal for Age Act even though the "statutory language [was] not entirely clear," no on-point case law existed, and "the Complaint [was] sparse on details regarding the alleged reprisal").

Accordingly, because Defendants have not met their "heavy burden" of proving fraudulent joinder, the Court grants Plaintiff's motion to remand. *Id.*[1]

---

[1] This Order should in no way be interpreted as opining on the merits of any of Plaintiff's claims against the Plymouth Building Defendants (or any other Defendants). Rather, the "ultimate success or failure" of Plaintiff's case will be determined by the state court in the first instance. *Fillia*, 336 F.3d at 811.

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand to State Court [Doc. No. 31] is **GRANTED**. In light of this Order, Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 36] is **DENIED AS MOOT**.

The Clerk of Court is **DIRECTED** to furnish a certified copy of this Order to the clerk of Hennepin County District Court, pursuant to 28 U.S.C. § 1447(c).


Dated:  March 11, 2019                             s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge